NORMAN FORBES ROBERTSON, Appellant, *v.* CHARLES FROHMAN, INC., Respondent.

First Department, December 2, 1921.

Contracts — construction — action for breach of contract of employment of plaintiff to play theatrical part — contract construed as guaranteeing plaintiff engagement for ten weeks — damages where right exists to terminate contract on notice — notice not required where plaintiff not permitted to enter on employment — plaintiff entitled to ten weeks' salary and transportation expenses — new trial ordered where plaintiff failed to move for direction of verdict.

In an action for the breach of a contract of employment by which the plaintiff was engaged to play a theatrical part it appeared that the contract, which was in writing and under seal, in addition to its printed provisions, providing, among other things, for the termination of the engage-

ment by either party on two weeks' notice, contained certain written clauses providing for a salary of $400 per week for a period of not less than ten weeks, together with the payment by the defendant of plaintiff's transportation expenses from London to New York and return; that the part which plaintiff was induced to play in New York was his original part in the play as it had been presented theretofore in London; that by reason of his acceptance of the defendant's offer at the opening of the theatrical season, he was necessarily deprived of an opportunity of obtaining another engagement at home or elsewhere; that as he was about to leave London, the defendant's manager informed him that another actor had been engaged to play the part, but did not assume to cancel the contract; that the plaintiff came to New York, and tendered his services, which were refused, and that he was not able to obtain another engagement. The defendant conceded that the plaintiff was not permitted to rehearse the production or play his part when he appeared in New York.

*Held,* that in view of the circumstances of the case and particularly of the plaintiff's prominence as an actor, the reasonable construction of the contract is that the defendant guaranteed the plaintiff an engagement for at least ten weeks, and, therefore, the printed provisions of the contract relative to its termination should give way to the express written provisions to the effect that the engagement was for not less than ten weeks.

It was not necessary for the defendant to give two weeks' notice to terminate the contract, for where a party refuses to proceed with a contract at the outset, the damages are to be determined and awarded as if a notice which he had a right to give had been given.

The salary under the contract for ten weeks and transportation expenses constituted the extent of defendant's liability.

The defendant conceded at the close of the case that it had breached the contract, and moved for a verdict in favor of the plaintiff for nominal damages, but the court directed a verdict in favor of the defendant. While the plaintiff was entitled to recover ten weeks' salary and traveling expenses as a matter of law, a new trial must be granted, unless the defendant consents to the entry of judgment, since the plaintiff failed to ask for the direction of a verdict in his favor.

APPEAL by the plaintiff, Norman Forbes Robertson, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 12th day of April, 1921, upon the verdict of a jury rendered by direction of the court.

*Davies, Auerbach & Cornell* [*Charles H. Tuttle* of counsel; *Martin A. Schenck* with him on the brief], for the appellant.

*Rose & Paskus* [*Edgar R. Kraetzer* of counsel], for the respondent.

LAUGHLIN, J.:

The appellant, an English actor of renown, brought this action to recover damages for a breach of a contract by which he was employed by the defendant on the 2d day of November, 1918, to play the part of Coade in the play known as " Dear Brutus " during the theatrical season of 1918–1919. The contract was in writing and under seal. At the opening of the trial the defendant conceded that the plaintiff was neither permitted to rehearse for, nor to play, the part when he appeared for the purpose in New York pursuant to the contract. In the year 1918 and prior thereto the plaintiff was playing this part in London and while so engaged defendant's London manager opened negotiations with him to play the part for the defendant in New York. The plaintiff manifested willingness to accept the engagement if the defendant would pay him a salary of $500 per week. The negotiations were resumed later on and resulted in plaintiff's agreeing to accept $400 per week, and the contract was signed in duplicate and exchanged in London at the office of the defendant's manager. Printed blank forms of contract presented in behalf of the defendant were used. The printed form recited that the artist was engaged to perform such professional services as might be required of him for the run of the play; and in a blank space following this was inserted, " Dear Brutus in the part of Coade," following which was printed " during the theatrical season of," and in the blank following this was inserted " 1918–19 this engagement to be for not less than ten weeks; " and after this there was printed in the duplicate contract delivered to the plaintiff, which only was offered in evidence, as the continuation of the sentence, the following: " in such characters to which the artist may be assigned; to commence on or about the —— day of ——, 19—, subject to the two weeks' clause hereinafter mentioned." The next printed sentence of the contract provided that the manager should determine when the season should commence and terminate, and that if the play should not be produced, the contract should terminate. The 2d paragraph of the contract provided in the printed form that the manager agreed to pay the artist " the sum of " and this was followed by a blank space after which was printed the following: " for each week

during which he sha'l have actually rendered such services."
In that blank space was inserted the following: "Four
hundred dollars per week for all performances." The 7th
printed paragraph provided that it was mutually agreed that
either party might annul the contract at any time "during
this engagement" by giving to the other two weeks' notice
of his intention so to do without assigning any reason or
cause therefor. In a blank in the 8th paragraph, relating to
transportation, there was inserted the following: "The man-
ager agrees to pay first class railroad and steamship fares from
London to New York and back to London on the termination
of this agreement." The 13th printed paragraph of the
agreement provided that it was mutually agreed that the
manager reserved the right to cancel the agreement at any
time before the opening of the company's season if he or his
representative should be dissatisfied with the artist during
rehearsals. On the 31st of October, 1918, plaintiff declined
an offer of an engagement in London in order to avail himself
of this offer to come to America. The day the contract was
signed defendant's manager arranged for plaintiff's passport
and transportation to New York on a steamer sailing two
weeks later, on the sixteenth of November. On the seventh
of November plaintiff was notified by defendant's London
manager that another actor had been engaged by the defend-
ant in his place to play this part in New York. Plaintiff
then consulted his solicitor and was advised to proceed to
New York and to tender his services to the defendant; and
he so informed the defendant's manager in London, who
repeated the information that another actor had been engaged
in his place and stated that plaintiff might do as he liked
in the matter and that he had cabled the defendant that
the plaintiff had been engaged by him before he received
notice that another actor had been employed by the defendant.
Plaintiff sailed for New York on the sixteenth of November
and as soon as convenient after arrival called on Mr. Hayman,
defendant's manager, and introduced himself. According to
the plaintiff's testimony Hayman seemed annoyed and said
that he knew nothing about this and asked why he came
when he had been urged by the defendant's London manager

First Department, December, 1921. [Vol. 198

not to do so, and had been informed that another actor had been employed for his part, to which plaintiff replied that he had come on the advice of his solicitors to carry out his contract. Plaintiff, considering that he had not had a satisfactory interview with Hayman, thereupon wrote him stating that he had come from England to carry out his agreement and to play his original part in " Dear Brutus " at a salary of $400 per week with a guaranty of ten weeks' salary and all traveling expenses. To that letter Hayman replied that defendant's position had been stated to him at the interview but that if plaintiff so desired he would be glad to see him at the office at any time. Plaintiff again wrote. Hayman setting forth his claim and stating that he would call; and he did call on the third of December and suggested to Hayman that the actor engaged in his place could play another part or be his understudy, and offered to pay part of his salary; but this was refused, and he then offered to accept the ten weeks' salary in full payment without expenses, this also was refused, and he sailed for London on the fifth of December. He then endeavored to obtain another engagement, but owing to the lateness in the season was unsuccessful. The court excluded a deposition by the plaintiff's London solicitor to the effect that before plaintiff sailed for New York, defendant's London manager stated that he had not attempted to cancel the contract and had no instructions so to do; and that his only information in the premises was the cablegram stating that another actor had been employed, and that he had no instructions to do more than to communicate that to the plaintiff who must decide for himself whether or not he would go to New York. That evidence should have been received but the error in excluding it is of no importance on this appeal since the testimony of the plaintiff is to the same effect. The rehearsals of the play presented by the defendant began on the eighteenth of November which was before the plaintiff arrived, but the play was not presented to the public until the twelfth of December at Atlantic City, and closed on the seventh of June thereafter at New York city after a run of twenty-five and one-half weeks. At the close of the evidence counsel for the defendant conceded its breach of the contract and moved for a direction of a verdict

in favor of the plaintiff for six cents. The court ruled that the plaintiff was not entitled to recover any salary and that the defendant was at liberty to cancel the contract as it did and plaintiff asked leave to go to the jury on all the questions in the case and particularly on the question of damages, but did not ask for the direction of a verdict in favor of the plaintiff.

We are of the opinion that the court erroneously construed the contract and that it should be construed as guaranteeing the plaintiff an engagement for ten weeks. It is to be borne in mind that the part which the defendant engaged the plaintiff to play was the plaintiff's original part in the play as it had theretofore been presented in London, and that the defendant was calling upon the plaintiff to come from London to New York at the opening of the theatrical season, which would deprive plaintiff of any chance of obtaining another engagement at home or elsewhere. In these circumstances, and particularly in view of the plaintiff's prominence as an actor, the reasonable construction of the contract is that the defendant guaranteed plaintiff an engagement for at least ten weeks, and, therefore, the printed provisions of the contract should give way to the express written provisions to the effect that the engagement was for not less than ten weeks. Inasmuch, however, as the guaranteed period was for only ten weeks, the defendant had the right under the 7th paragraph to terminate the contract at the expiration of that period by giving the plaintiff two weeks' notice of its intention so to do, and although it did not give such notice, the law in this jurisdiction is that where a party refuses to proceed with a contract at the outset, the damages are to be determined and awarded as if a notice, which he had a right to give, had been given. (*Watson* v. *Russell,* 149 N. Y. 388.) Defendant's manager in London did not assume to cancel the contract, and, therefore, the plaintiff was justified, and indeed I think he was required, for the protection of his own interests, to come to New York and tender his services. Salary under the contract for ten weeks and transportation expenses constituted the extent of the liability of the defendant. Hotel and other expenses the plaintiff would have been obliged to bear had defendant not breached the contract and the damages recoverable are limited to the loss sustained by the plaintiff in being deprived of the

benefit of his contract. We are of opinion, therefore, that the plaintiff was entitled as matter of law to recover for ten weeks' salary and his transportation expenses from London to New York and return, but inasmuch as the plaintiff did not move for the direction of a verdict, we have no alternative but to award a new trial unless on the settlement of the order the defendant consents to the entry of judgment in accordance with these views. It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., SMITH, MERRELL and GREENBAUM, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event, unless defendant consents to entry of judgment in accordance with views expressed in opinion. Settle order on notice.